No. 23-11394

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

LAQUAN S. JOHNSON,

*Appellant*,

v.

ELAINE TERRY, ET AL.,

*Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
CASE NO. 1:18-CV-01899-AT

———————————

## BRIEF OF APPELLANT LAQUAN S. JOHNSON

———————————

W. Ray Persons
J. Matthew Brigman
Logan R. Hobson
Thomas H. Paris, IV
**KING & SPALDING LLP**
1180 Peachtree Street
Atlanta, Georgia 30309
rpersons@kslaw.com
mbrigman@kslaw.com
lhobson@kslaw.com
tparis@kslaw.com
(404) 572-4600 (telephone)
(404) 572-5139 (facsimile)

*Counsel for Appellant LaQuan S. Johnson*

June 29, 2023

**No. 23-11394**
**LaQuan S. Johnson v. Elaine Terry, et al.**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and

Eleventh Circuit Rule 26.1-1, undersigned counsel for Appellant certify that the

following persons and entities have an interest in the outcome of this case:

- Avery, Matthew

- Brigman, James Matthew

- Burgess, Uleesees

- Drew, Darlene

- Fayad, David

- Garcia, Carolina

- Harris, Terrisha

- Hobbs, Otho

- Hobson, Logan

- Honorable Amy Totenberg

- Johnson, Laquan S.

- Mackelburg, William

- Martin, Darren

- Nwude, Michael

- Paris, Thomas

- Persons, W. Ray

- Powell, David

- Terry, Elaine

- Willis, Walter

- Winston, James

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 28-1(c), Appellant submits that this Court should hear oral argument on this appeal. Oral argument would aid the Court in its consideration of the questions presented, which raise important issues regarding the implications of the recent Supreme Court decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022) on claims brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Specifically, this case raises the novel questions of (1) whether failure-to-protect *Bivens* claims remain viable after the Supreme Court's *Egbert* decision, and (2) whether the BOP's administrative grievance process counsels against expansion of a *Bivens* remedy when that process is specifically unavailable to plaintiff due to active interference from prison officials.

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** ...................................................................i

**STATEMENT REGARDING ORAL ARGUMENT**..........................................iii

**STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION** ............................................................................ix

**STATEMENT OF ISSUES** ...........................................................................1

**I.    Whether the District Court erred in holding that failure-to-protect claims are no longer viable after *Egbert*.** ..........................................1

**II.   Whether the District Court erred in holding that Johnson's medical indifference claims are meaningfully different from those recognized in *Carlson v. Green*, 446 U.S. 14 (1980).** ...................................1

**III.  Whether the District Court erred in holding that the BOP's administrative remedy process counsels against expansion of Johnson's *Bivens* claims, despite its previous finding that the process was completely unavailable to Johnson due to Defendants' subversion.**........................................................................1

**STATEMENT OF THE CASE** ...................................................................2

**SUMMARY OF THE ARGUMENT** ...........................................................5

**ARGUMENT AND CITATIONS OF AUTHORITY** ...................................8

**I.    District Court Erred In Finding That Failure-To-Protect Claims Are No Longer Viable Following *Egbert*.** ...........................................12

**II.   The District Court Erred In Holding That Johnson's Medical Indifference Claims Are "Meaningfully Different" From Those Recognized In *Carlson v. Green*, 446 U.S. 1468 (1980).** ...................17

**III.  The District Court Erred in Finding that Special Factors Counseled Against Expansion of Plaintiff's Claims.** ...................................21

**CONCLUSION** .....................................................................................28

**CERTIFICATE OF COMPLIANCE** .................................................... **29**

**CERTIFICATE OF SERVICE** ........................................................... **30**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron v. City of Lowell*,
   No. 20-CV-11604-ADB, 2023 WL 2743337 (D. Mass. Mar. 31,
   2023) ........................................................................................................ 26

*Agostini v. Felton*,
   521 U.S. 203 (1997) ................................................................................ 14

*Ballard v. Dutton*,
   No. 9:21-CV-1248, 2023 WL 2262785 (N.D. N.Y. Feb. 28, 2023) ................. 17

*Caldwell v. Warden, FCI Talladega*,
   748 F.3d 1090 (11th Cir. 2014) .......................................................... 13, 17

*Carlson v. Green*,
   446 U.S. 14 (1980) ........................................................................... *passim*

*Correctional Services Corp. v. Malesko*,
   534 U.S. 61 (2001) ............................................................................ 11, 25

*Dailey v. Fleming*,
   No. 422CV00008CDLMSH, 2023 WL 3858302 (M.D. Ga. Apr. 10,
   2023) ........................................................................................................ 15

*Dinkins v. United States*,
   No. 221CV08942CASKES, 2022 WL 16735362 (C.D. Cal. Aug. 19,
   2022) ........................................................................................................ 20

*Dorsey v. Whittington*,
   No. 523CV00089TESCHW, 2023 WL 3765242 (M.D. Ga. June 1,
   2023) ........................................................................................................ 15

*Duncan v. United States*,
   No. 1:20-CV-1685-SEG, 2023 WL 2370479 (N.D. Ga. Feb. 27,
   2023) .................................................................................................. 18, 19

*Egbert v. Boule*,
    142 S.Ct 1793 (2022), 2021 WL 3409109 ................................................*passim*

*Farmer v. Brennan*,
    511 U.S. 825 ...........................................................................................*passim*

*Foreman v. United States*,
    No. 22-10401, 2023 WL 1991561 (E.D. Mich. Feb. 14, 2023).........................19

*Garraway v. Ciufo*,
    No. 1:17-cv-005330ADA-GSA (PC), 2023 WL 1446823 (C.D. Ca.
    Feb. 1, 2023) ....................................................................................................16

*Hammack v. Schneider*,
    2023 WL 143312 (S.D. Ill. Jan. 10, 2023) ................................................11, 20

*Himmelreich v. Fed. Bureau of Prisons*,
    No. 4:10CV2404, 2019 WL 4694217 (N.D. Ohio Sept. 25, 2019) ............24, 25

*Hoffman v. Preston*,
    No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022)..............................16

*Jacobs v. Alam*,
    915 F.3d 1028 (6th Cir. 2019) ...........................................................................8

*Kennedy v. Massachusetts*,
    No. CV 22-11152-NMG, 2022 WL 17343849 (D. Mass. Nov. 30,
    2022) .............................................................................................................5, 11

*Kidd v. Mayorkas*,
    2022 WL 17584225 (C.D. Cal. Dec. 12, 2022)............................................5, 11

*Masias v. Hodges*,
    No. 21-6591, 2023 WL 2610230 (4th Cir. Mar. 23, 2023)...............................20

*Perez-Lopez v. Bialor*,
    No. 20CV02518HGRML, 2023 WL 2682922 (E.D.N.Y. Mar. 29,
    2023) ...............................................................................................................20

*Raines v. Byrd*,
    521 U.S. 811 (1997) .........................................................................................25

vii

*Rodriguez v. Ahmed*,
    No. 20-CV-01236-JPG, 2023 WL 361207 (S.D. Ill. Jan. 23, 2023) .................... 5

*Thomas v. Bradshaw*,
    No. 20-13471, 2022 WL 333244 (11th Cir. Feb. 4, 2022) ................................ 27

*Vessels v. Atlanta Indep. Sch. Sys.*,
    408 F.3d 763 (11th Cir. 2005) ............................................................... 8

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ................................................................ *passim*

**Statutes**

28 U.S.C. § 1291 .................................................................................. ix

28 U.S.C. §§ 1331 and 1343(a)(3) .............................................................. ix

Prison Litigation Reform Act of 1995 ...................................................... 3

**Other Authorities**

Fed. R. Civ. P. 56(a) ............................................................................ 8

FRAP 32(a)(5) and (6) .......................................................................... 29

FRAP 32(a)(7)(B)(i) ............................................................................. 29

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

This is an appeal from a final order of the U.S. District Court for the Northern District of Georgia entered on March 23, 2023. Dkt. 202.  LaQuan S. Johnson timely filed a notice of appeal on April 21, 2023. Dkt. 205. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  Underlying subject matter jurisdiction in this case rests on federal question jurisdiction in that Johnson seeks redress for violation of the United States Constitution.  28 U.S.C. §§ 1331 and 1343(a)(3).

## <u>STATEMENT OF ISSUES</u>

I.    Whether the District Court erred in holding that failure-to-protect claims are no longer viable after *Egbert*.

II.   Whether the District Court erred in holding that Johnson's medical indifference claims are meaningfully different from those recognized in *Carlson v. Green*, 446 U.S. 14 (1980).

III.  Whether the District Court erred in holding that the BOP's administrative remedy process counsels against expansion of Johnson's *Bivens* claims, despite its previous finding that the process was completely unavailable to Johnson due to Defendants' subversion.

## STATEMENT OF THE CASE

Defendants[1] are current and former officials at USP-Atlanta. During the relevant period, September 2015 to April 2019, Plaintiff LaQuan S. Johnson was repeatedly housed with medium- and high- security inmates against USP-Atlanta policy, despite numerous complaints to Defendants that such inmates posed a significant threat to his safety. Dkt. 185 at 3-9. Johnson's worst fears came true. He was attacked on three separate occasions by three separate medium- and high-security inmates. *Id.* Those attacks led to serious injuries, including a broken wrist, nerve damage, and a shattered jaw that required outpatient surgery. *Id.*

The record demonstrates that Defendants purposefully withheld treatment for Johnson's injuries, including, most egregiously, refusing to provide Johnson with his prescribed liquid diet following jaw surgery. *Id.* at 15-24. Hungry, and left with no other options, Johnson was forced to cut the surgical wires holding his fractured jaw together with fingernail clippers just so he could eat. *Id.* And when Johnson complained about his horrendous treatment at USP-Atlanta, Defendants threatened and even physically abused him. *Id.* at 24-50. Based on these events, Johnson

---

[1] The term "Defendants" refers collectively to Matthew Avery, Uleesees Burgess, Darlene Drew, David Fayad, Carolina Garcia, Terrisha Harris, Otho Hobbs, William Mackelburg, Darren Martin, Michael Nwude, Elaine Terry, Walter Willis, and James Winston.

brought claims against Defendants under *Bivens* for failure-to-protect, medical indifference, and excessive force. *See* Dkt. 29.

Defendants moved to dismiss Johnson's *Bivens* claims for failure to exhaust administrative remedies under the Prison Litigation Reform Act. Dkt. 100. The District Court adopted the Magistrate's Report and Recommendation ("R&R") and denied Defendants' motion after finding that the BOP's administrative remedy process was unavailable to Johnson because Defendants actively "thwarted" his attempts to comply with it. Dkts. 107, 118. Specifically, the District Court found, after a round of targeted discovery, that the record adequately demonstrated that: (1) Defendants refused to provide Johnson with the necessary BOP administrative remedy forms; (2) Defendants refused to properly submit Johnson's administrative remedy forms; (3) Defendants failed to provide Johnson with the BOP's responses to his complaints in a timely fashion; (4) Defendants were not sufficiently trained in USP-Atlanta's administrative remedy process; and (5) Defendants retaliated against Johnson for his attempts to expose their awful behavior. Dkt. 118.

Defendants moved for summary judgment on March 23, 2022. Shortly thereafter, the Supreme Court issued its *Egbert v. Boule* decision. After the close of briefing, the Court requested additional argument specific to *Egbert* and its potential impact on Johnson's claims. Dkt. 194. Johnson submitted additional briefing on

October 12, 2022, explaining that *Egbert* did not overrule *Bivens*, nor did it disturb Johnson's specific claims against Defendants. Dkt. 195.

The Magistrate, based on the incorrect premise that *Bivens* claims are "impermissible in virtually all circumstances" following *Egbert*, issued an R&R on January 30, 2023, recommending that the Court grant summary judgment in favor of Defendants. Dkt. 198 at 13 (quoting *Silva v. United States*, 45 F.4th 1134, 1138 (10th Cir. 2022)). The District Court acknowledged that the Magistrate's findings leave Johnson "without access to any realistic remedy and is not consistent with fundamental principles of justice." Dkt. 202 at 15. Nevertheless, the District Court "reluctantly agree[d]" with the R&R and held that "[u]nder *Egbert*, none of Plaintiff's *Bivens* claims are cognizable." *Id.* at 4, 15. The District Court specifically ruled that: (1) failure-to-protect claims are no longer viable after *Egbert*, irrespective of the Supreme Court's previous decision in *Farmer v. Brennan*; (2) Johnson's medical indifference claims are sufficiently different from those in *Carlson* because his injuries were not "life-threatening"; and (3) the BOP's administrative remedy process counseled against expansion of Johnson's claims, despite the Court's previous finding that the process was completely unavailable to Johnson due to Defendants' interference. *Id.* at 6-16. Johnson now appeals those findings.

4

## SUMMARY OF THE ARGUMENT

The District Court erred in its interpretation and application of *Egbert*. The Supreme Court did not overrule *Bivens* with *Egbert*, nor did it change the analytic framework that binds district courts when confronting such claims. The *Egbert* decision itself recognized this: "[T]o decide the case before us, we need not reconsider *Bivens* itself." *Egbert*, 142 S. Ct. at 1809. So have the cases that followed. *See, e.g.*, *Kidd v. Mayorkas*, 2022 WL 17584225, at *5 (C.D. Cal. Dec. 12, 2022) ("[T]his Court does not read *Egbert* as constituting a 'sea change' in *Bivens* jurisprudence."); *Rodriguez v. Ahmed*, No. 20-CV-01236-JPG, 2023 WL 361207, at *3 (S.D. Ill. Jan. 23, 2023) ("Significantly, the Supreme Court did not overturn *Bivens* or its progeny in *Egbert*."); *Kennedy v. Massachusetts*, No. CV 22-11152-NMG, 2022 WL 17343849, at *4 (D. Mass. Nov. 30, 2022) ("*Egbert* did not overrule *Bivens* nor did it overrule the First Circuit's relevant *Bivens* jurisprudence."). Rather, the *Egbert* Court simply acknowledged that the two-step *Abbasi* inquiry could be conceptually merged into one question: "Whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. After finding that plaintiff's excessive force claims against a Border Patrol agent implicated national security issues that counseled against an extension of *Bivens*, the *Egbert* Court answered that question in the affirmative.

5

Unlike in *Egbert*, this case does not implicate national security interests that weigh against the finding of a *Bivens* remedy. Johnson's claims, which arise in the typical federal prison context, fit squarely in the molds of *Bivens*, its progeny, and decades of related precedent. And even if Johnson's claims do present new contexts for purposes of *Bivens* (they do not), there are no special factors that counsel against expansion. If anything, Johnson's particular circumstances, including Defendants' active interference with Johnson's administrative remedy process, make him a prime candidate for *Bivens*. He has no other redress.

The District Court's overreliance on *Egbert* led to three specific missteps. *First*, the District Court erred in finding that failure-to-protect claims are no longer cognizable following *Egbert*. In *Farmer v. Brennan*, 511 U.S. 825, the Supreme Court found that prison officials could be "held liable under the Eighth Amendment for denying humane conditions of confinement." *Id.* at 847-48. The Supreme Court further emphasized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833-34. The Supreme Court's failure to mention *Farmer* in its recent *Abbasi* and *Egbert* decisions did not overrule *Farmer* by implication. The Supreme Court has specifically cautioned against this practice. Moreover, various courts, including district courts within the Eleventh Circuit, continue to recognize failure-to-protect claims, even after *Abbasi* and *Egbert*.

6

*Second*, the District Court erred in holding that Johnson's medical indifference claims are meaningfully different from those recognized in *Carlson v. Green*, 446 U.S. 14 (1980). There are no material differences between the abuse, harassment, and neglect Johnson suffered at the hands of Defendants and the allegations deemed viable by *Carlson* and subsequent court decisions. By imposing a requirement that plaintiff's injuries must be life-threatening, the District Court unnecessarily cabined medical indifference claims to the exact facts of *Carlson*. This requirement runs afoul of law and logic, and it leads to absurd results.

*Third*, the District Court erred in holding that the availability of the BOP's administrative remedy program counseled against expanding Johnson's claims, despite previously finding that the BOP's administrative remedy program was specifically unavailable to Johnson because Defendants "thwarted his attempts to grieve in a number of ways." Dkt. 118 at 14. Johnson's inability to obtain relief from the BOP's administrative remedy program cannot be overlooked. Indeed, in *Egbert*, the Supreme Court found it especially important that "[plaintiff] took advantage of this grievance procedure, prompting a year-long internal investigation into [defendant's] conduct." *Egbert*, 142 S. Ct. at 1806. Moreover, contradicting itself, the District Court expressly acknowledged that plaintiff's inability to take advantage of the grievance process played a critical role in the seminal *Carlson* decision. *See* Dkt. 202 at 7 ("[T]he *Carlson* plaintiff, having died, could not take advantage of the

administrative grievance procedures made available to federal prisoners."). A remedy that is beyond plaintiff's reach cannot weigh against the finding of a *Bivens* claim.

For these reasons, which are explained more fully below, Johnson respectfully requests this Court to reverse the District Court's grant of Defendants' motions for summary judgment.

## ARGUMENT AND CITATIONS OF AUTHORITY

The Eleventh Circuit reviews a district court's order granting summary judgment *de novo*, viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is appropriate only when the record shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For reasons explained below, *Egbert* did not disturb the viability of Plaintiff's claims, which are cognizable under *Bivens* and its progeny. Accordingly, this Court should reverse the District Court's decision.

Although the Supreme Court has trimmed *Bivens*'s "outer reaches," it has taken "great care" to confirm that the "core of *Bivens*" remains intact. *Jacobs v. Alam*, 915 F.3d 1028, 1037 (6th Cir. 2019) (*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856-57 (2017)). In *Abbasi*, decided in June 2017, the Supreme Court held that *Bivens*

8

should not be extended to Fifth Amendment claims challenging plaintiffs' pretrial confinement conditions following the September 11th attacks. *Abbasi*, 137 S. Ct. at 1856-57. However, the Supreme Court expressly stated that its opinion was not intended to "cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." *Id.* at 1856. Next, in *Hernandez v. Mesa*, the Supreme Court explained it was not extending *Bivens* to cases that threatened the "delicate web of international relations," but left alone domestic law enforcement. 140 S. Ct. 735, 749 (2020). And in *Egbert*, the Court was asked—but declined—to "reconsider Bivens" entirely. Petition for Writ of Certiorari, *Egbert v. Boule*, 142 S.Ct 1793 (2022) (No. 21-147), 2021 WL 3409109, at *i. Instead, in its opinion, the Court affirmatively noted that it was not "dispens[ing] with *Bivens* altogether." *Egbert*, 142 S. Ct. at 1803.

As articulated in *Abbasi*, and re-stated in *Egbert*, the Supreme Court has codified a two-step process for evaluating a proposed *Bivens* claim. *Abbasi*, 582 U.S. at 138; *Egbert*, 142 S. Ct. at 1803. First, the district court must determine "whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (alteration in original) (quoting *Abbasi*, 582 U.S. at 139). "Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to

'weigh the costs and benefits of allowing a damages action to proceed.' " *Id.* at 1803 (quoting *Abbasi*, 582 U.S. at 136).

Contrary to the District Court's order, the recent *Egbert* decision did not drastically alter the *Bivens* landscape. The *Egbert* Court instructed that, when lower courts are asked to evaluate a *Bivens* claim, they must still apply the two-step analysis set forth in *Abbasi*. *Egbert*, 142 S. Ct. at 1803. The Court, however, noted that while *Abbasi* and its progeny "described two steps, those steps often resolve to a single question: 'Whether there is any reason to think that Congress might be better equipped to create a damages remedy.'" *Id.* Applying these principles, the Supreme Court found that plaintiff's claim for excessive force against a Border Patrol agent failed at step two of the *Abbasi* analysis. *Id.* at 1804. First, the Supreme Court found that regulating the conduct of border agents has "national security implications" and the risk of undermining those implications provides a sufficient reason to hesitate before extending *Bivens*. *Id.* Second, the Court found that alternative remedies were available to—and pursued by—plaintiff, further counseling against expansion. *Id.* at 1806-07.

Thus, in the wake of *Egbert*, district courts must still engage in the *Abbasi* two-step analysis in determining whether a particular *Bivens* claim can lie. And *Egbert*'s simple observation that the two steps can be conceptually merged into one does not eviscerate several decades of caselaw. The *Egbert* opinion itself—and cases

10

decided in its wake—are very clear on this point. *See Egbert*, 142 S. Ct. at 1809 ("[T]o decide the case before us, we need not reconsider *Bivens* itself."); *Kidd*, 2022 WL 17584225, at *5 ("[T]his Court does not read Egbert as constituting a 'sea change' in *Bivens* jurisprudence.").

To that end, following the *Egbert* decision, courts continue to recognize various forms of *Bivens* claims that fit under *Bivens* and its progeny. *See, e.g.*, *Hammack v. Schneider*, 2023 WL 143312, at *3 (S.D. Ill. Jan. 10, 2023) (denying defendants' motion for judgment on the pleadings because plaintiff's *Bivens* claim was practically indistinguishable from *Carlson*); *Kennedy v. Massachusetts*, 2022 WL 17343849 (D. Mass. Nov. 30, 2022) ("[Plaintiff's] cause of action arises in the same context as that of *Bivens* itself: federal agents conducting an unreasonable search of someone's residence without a search warrant.").

The archetype of traditional *Bivens* claims are suits against individual federal officers for committing constitutional violations. *Abbasi*, 137 S.Ct at 1882 (Breyer, J., dissenting). Traditional Bivens claims "deter individual federal officers from committing constitutional violations" *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001), and "provide [] instruction and guidance to federal law enforcement" *Abbasi*, 137 S. Ct. at 1856-57. These "powerful reasons" continue to justify conventional *Bivens* claims. *Id*. at 1857. So long as a plaintiff pleads a claim similar to the claim in *Bivens* itself—rather than a claim in a "new" context that

11

differs "in a meaningful way" from previous *Bivens* cases—that claim may proceed. *Egbert*, 142 S. Ct. at 1803; *Abbasi*, 137 S. Ct. at 1859-60.

Johnson's claims, as discussed below, present well-established *Bivens* contexts. He was deliberately ignored, attacked, and severely injured while in federal custody. *Egbert* does not somehow change this fact. And even if Johnson's claims did present new contexts (they do not), the District Court's stated reason for refusing to expand *Johnson*'s specific claims cannot apply here.

## I. District Court Erred In Finding That Failure-To-Protect Claims Are No Longer Viable Following *Egbert*.

The Supreme Court has already recognized a failure-to-protect claim indistinguishable from Johnson's. In *Farmer v. Brennan*, the Supreme Court specifically held—in the context of a *Bivens* claim—that a prison official could be held liable under the Eighth Amendment for failing to protect an inmate from foreseeable harm. *Farmer*, 511 U.S. at 833-34. Plaintiff in *Farmer*, a transgender woman, brought an Eighth Amendment *Bivens* action after she was attacked and raped following her placement in the prison's general population, despite prison officials being aware that she was "particularly vulnerable to sexual attack[.]" *Id.* 830-31. The Supreme Court addressed plaintiff's case on the merits, acknowledged the viability of her claims, and concluded that prison officials could "be held liable under the Eighth Amendment for denying humane conditions of confinement." *Id.*

at 847-48. The Court further emphasized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833-34.

The Eleventh Circuit, relying on *Farmer*, explicitly recognized failure-to-protect claims in *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090 (11th Cir. 2014). There, plaintiff alleged that prison officials failed to protect him from his cellmate, who was known by the officials to be violent and who had personally threatened plaintiff. *Id.* at 1101-1103. Reversing the lower court's grant of summary judgment to the defendants, the Eleventh Circuit held that a reasonable jury could infer, based upon the facts alleged, that the defendants knew the cellmate faced a substantial risk of serious harm. *Id.* at 1102. The court remanded for plaintiff to pursue his failure-to-protect claims. *Id.*

While the Eleventh Circuit has not directly addressed failure-to-protect claims after the Supreme Court's *Abbasi* decision, at least one other Circuit has found, post-*Abbasi*, that such claims remain alive and well. In *Bistrian v. Levi*, the Third Circuit held that pretrial detainees "have a clearly established constitutional right to have prison officials protect [them] from inmate violence." 912 F. 3d 79. 90 (3d Cir. 2018). The plaintiff in *Bistrian* was a federal inmate who, like Johnson, sued under *Bivens* after prison officials failed to protect him from other prisoners, punitively detained him in the Special Housing Unit, and retaliated against him for complaining

13

about his confinement. *Id.* at 83. In rendering its decision, the Third Circuit noted the following:

> Although the *Farmer* Court did not explicitly state that it was recognizing a *Bivens* claim, it not only vacated the grant of summary judgment in favor of the prison officials but also discussed at length 'deliberate indifference' as the legal standard to assess a *Bivens* claim, the standard by which all subsequent prisoner safety claims have been assessed. It seems clear, then, that the Supreme Court has, pursuant to *Bivens*, recognized a failure-to-protect claim under the Eighth Amendment.

*Id.* at 90-91 (citations omitted).

Here, the District Court rejected the "current vitality" of *Bistrian*, noting that "the Supreme Court itself does not recognize *Farmer* as creating a *Bivens* action." Dkt. 202 at 12. Per the District Court, because *Abbasi* and *Egbert* cite only to *Bivens*, *Davis*, and *Carlson* as instances where the Supreme Court recognized an implied *Bivens* remedy, *Farmer* must have been overruled by implication. This reasoning has serious flaws and constitutes reversible error.

*First*, the Supreme Court has repeatedly cautioned that "[lower] courts should [not] conclude [that] more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). "[When] a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Id.* (quoting *Rodriguez de Quijas v. Shearson/American Express,*

14

*Inc.*, 490 U.S. 477, 484 (1989)). The District Court deliberately ignored this instruction. *Farmer*, and no decision for that matter, should be overruled by implication.

*Second*, while there here is no mention of *Farmer* in the *Abbasi* majority opinion, it is explicitly referenced in Justice Breyer's dissent. *Abbasi*, 137 S. Ct. at 1878. Justice Breyer concluded that plaintiffs' claims "would seem to fill the *Bivens*' bill," citing to previous Supreme Court decisions, including *Farmer*. At a minimum, multiple Supreme Court Justices in the *Abbasi* dissent understood *Farmer* to remain good law. The District Court is in no position to find otherwise.

*Third*, district courts around the country continue to cite *Farmer* in recognizing failure-to-protect claims, even after *Abbasi* and *Egbert*. *See Dorsey v. Whittington*, No. 523CV00089TESCHW, 2023 WL 3765242, at *2 (M.D. Ga. June 1, 2023) ("Plaintiff's Complaint gives rise to a claim that Defendant Whittington—the WSP Warden and the only named Defendant in this action—was deliberately indifferent to his safety. This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution."); *Dailey v. Fleming*, No. 422CV00008CDLMSH, 2023 WL 3858302, at *4 (M.D. Ga. Apr. 10, 2023), *report and recommendation adopted*, No. 4:22-CV-8-CDL-MSH, 2023 WL 3853936 (M.D. Ga. June 6, 2023) ("The Eleventh Circuit has held the Eighth Amendment impose[s] a duty on prison

officials to take reasonable measures to guarantee the safety of the inmates. This includes protecting prisoners from violence at the hands of other prisoners.") (citing *Farmer*, 511 U.S. at 833) (internal quotations omitted).

For example, in February 2023, the Central District of California considered a prisoner's failure-to-protect claim resulting from prison officials' purported "failure to move him from a cell after he reported that his cellmate had cut his nose with a razor and struck Plaintiff's left side of his jaw." *Garraway v. Ciufo*, No. 1:17-cv-005330ADA-GSA (PC), 2023 WL 1446823, at *1 (C.D. Ca. Feb. 1, 2023). The Court denied defendants' motion for reconsideration following *Egbert* and specifically held that "*Farmer* . . . is still precedent in light of *Egbert v. Boule*." *Id.* at *2. The court reasoned that "it would be incongruous to regard *Farmer* as a 'new context' when the Supreme Court in that case recognized a *Bivens* claim under the Eight Amendment for a failure to protect an inmate from violence by other prisoners." *Id.* at *3. Accordingly, the Court found, "[t]he Supreme Court's decision in *Farmer* is a cornerstone of Eighth Amendment jurisprudence and remains binding authority." *Id.*[2]

---

[2] The District Court's order cites to the Ninth Circuit's decision in *Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022). *Hoffman* does not categorically reject failure-to-protect claims. Indeed, as noted above, district courts within the Ninth Circuit continue to apply *Farmer* and recognize such claims.

In *Ballard v. Dutton*, the Northern District of New York reached the same conclusion. *Ballard v. Dutton*, No. 9:21-CV-1248 (LEK/CFH), 2023 WL 2262785 (N.D. N.Y. Feb. 28, 2023). After analyzing the different authorities on the issue, the court found that *Farmer* continues to be binding authority and denied defendants' motion to dismiss. *Id.* at 8. The court specifically held that neither *Abbasi* nor *Egbert* "contradict" the reasoning in *Farmer* and that the decision "continues to be the case that most directly deals with whether a *Bivens* remedy is available for a failure-to-protect claim resulting in physical injury." *Id.* at *3.

In sum, neither *Abbasi* nor *Egbert* disturbed the Supreme Court's previous recognition of failure-to-protect claims in *Farmer*. As such, both *Farmer* and the Eleventh Circuit's precedent in *Caldwell* control here—expressly giving rise to Johnson's failure-to protect-claim.

## II.    The District Court Erred In Holding That Johnson's Medical Indifference Claims Are "Meaningfully Different" From Those Recognized In *Carlson v. Green*, 446 U.S. 1468 (1980).

In *Egbert*, the Supreme Court recognized the survival of implied *Bivens* remedies for claims that fall within the bounds of *Carlson*—a case involving an Eighth Amendment claim for deliberate indifference to an inmate's serious medical needs. *Egbert*, 142 S. Ct. at 1802. Nevertheless, the District Court agreed with the Magistrate's determination that Plaintiff's medical indifference claims presented a

17

new context because his injuries "were not life-threatening, there was no medical emergency, and he did not die." Dkt. 202 at 7.

Medical indifference claims are not cabined to the exact facts of *Carlson*, as the District Court's order suggests. If that were the case, then virtually no medical indifference claims would be cognizable—an absurd result to say the least. *See Duncan v. United States*, No. 1:20-CV-1685-SEG, 2023 WL 2370479, at *5 (N.D. Ga. Feb. 27, 2023) ("The Court has been presented with no binding authority to show that the fact that Carlson died while Plaintiff lived constitutes the kind of meaningful difference that creates a new *Bivens* context."). What matters instead is whether Johnson's claims are "meaningfully different" from those in *Carlson*. In Johnson's case, the answer to that question is no.

In *Carlson*, Supreme Court recognized a *Bivens* remedy against individual prison officials for their alleged failure to provide an asthmatic prisoner with adequate medical care. *Carlson*, 446 U.S. at 16, n.1. The prisoner's mother alleged that the officials were "fully apprised" of his condition yet failed to provide competent medical attention. *Id.* Here, Johnson likewise alleges that Defendants prison officials, acting with deliberate indifference, deprived him of medically necessary assistance. Both cases involve a claim for denial of medical care in a prison setting. Both cases involve a similar class of defendants, which includes medical officers. Both cases are predicated on the same constitutional amendments.

And "perhaps most significantly, both [Johnson] and the plaintiff in *Carlson* alleged that the defendants went against their doctor's orders and denied them the recommended treatment." *Foreman v. United States*, No. 22-10401, 2023 WL 1991561, at *3 (E.D. Mich. Feb. 14, 2023). That is more than enough to recognize Johnson's medical indifference claims.

Johnson's medical indifference claims are also akin to those explicitly recognized by other district courts following the *Egbert* decision. In *Duncan v. United States*, No. 1:20-CV-1685-SEG, 2023 WL 2370479, at *1 (N.D. Ga. Feb. 27, 2023), plaintiff brought a *Bivens* claim alleging that he was denied a medically prescribed diet while incarcerated at USP-Atlanta. Plaintiff alleged that in the 19 days following his arrival at USP Atlanta, prison officials failed to give him food that he could eat without risking allergic reaction, and ignored his repeated pleas and protestations of hunger and weight loss. *Id.* The *Duncan* court rejected defendants' arguments that plaintiff's claims presented a new context following the Supreme Court's *Egbert* decision. *Id.* at 5-6. In doing so, the district court found that just like *Carlson*, plaintiff had "alleged that prison officials failed to take reasonable steps in response to his serious medical need[s]." *Id.* The court further noted that "district courts around the country have permitted medical deliberate indifference claims to proceed under *Carlson* and have done so without requiring an exact match to *Carlson*'s facts." *Id.*

19

And earlier this year, the Fourth Circuit in *Masias v. Hodges* reversed a district court's finding that plaintiff's medical indifference claims presented a new context because they "were not as severe as those in *Carlson* and were not likely to cause permanent damage or death." *Masias v. Hodges*, No. 21-6591, 2023 WL 2610230, at *1 (4th Cir. Mar. 23, 2023). Plaintiff there allegedly received delayed treatment for nasal infection, and was denied treatment for a hernia, ankle injury, and issues with his toenail. *Id.* The Court concluded that the facts did not present a new context and that, viewing the facts alleged in the light most favorable to plaintiff, a *Bivens* remedy was available. *Id.* at *2.[3]

In sum, medical indifference claims do not require death or near-death experiences. Johnson's claims fall within the bounds of *Carslon* and its progeny and do not present "new contexts." *Egbert* does not somehow counsel otherwise.

---

[3] Other examples include: *Hammack v. Schneider*, No. 19-CV-00230-JPG, 2023 WL 143312, at *3 (S.D. Ill. Jan. 10, 2023) (allowing prisoner's case to proceed to trial where inadequate treatment led to loss of use of prisoner's hand because "[t]he instant case presents virtually the same context as Carlson. Both cases involve an Eighth Amendment claim arising from the denial of medical care in a prison setting."); *Dinkins v. United States*, No. 221CV08942CASKES, 2022 WL 16735362, at *6 (C.D. Cal. Aug. 19, 2022), *report and recommendation adopted*, 2022 WL 15525746 (C.D. Cal. Oct. 27, 2022) (finding Eighth Amendment claim based on prison officials' failure to provide care for sinus condition did not create new *Bivens* context); *Perez-Lopez v. Bialor*, No. 20CV02518HGRML, 2023 WL 2682922, at *7 (E.D.N.Y. Mar. 29, 2023) ("The Supreme Court in Egbert expressly acknowledged that it had previously recognized a damages remedy under *Bivens* to vindicate 'a federal prisoner's inadequate-care claim under the Eighth Amendment.'") (cleaned up).

## III.    The District Court Erred In Finding that Special Factors Counseled Against Expansion Of Plaintiff's Claims.

As discussed *supra*, none of Johnson's claims present a new context for purposes of *Bivens*. But even if they did, the District Court erred in finding that special factors counseled against expansion. Specifically, the Court concluded that the existence of the BOP's administrative remedy process precluded Johnson's claims at step two of the *Abbasi* framework. Dkt. 202 at 8-9, 11. This finding was improper because the District Court previously held, at the dismissal stage, that Johnson did not have meaningful access to the administrative remedy process due to Defendants' active interference. *See* Dkt. 118.

With the benefit of discovery, the District Court refused to dismiss the operative complaint after finding that the BOP's administrative grievance process was completely unavailable to Johnson "because the administrative review process was both a 'dead end' and because prison administrators thwarted his attempts to grieve in a number of ways." *Id.* at 14.

To quote the District Court:

[There was an] overwhelming amount of evidence recounted in the R&R showing that the administrative process was not available to Plaintiff because *inter alia*: BOP staff withheld BP forms from Plaintiff; Plaintiff's requests were denied on technical grounds but he would not receive a copy of those denials and did not know how to rectify them; Defendant Terry and others refused to pass along Mr. Johnson's remedy requests; members of BOP would misrepresent the dates they delivered administrative decisions to Mr. Johnson; and that

21

when Plaintiff raised these grievances, he was threatened intimidated, placed in SHU, and/or shackled.

*Id.* at 17.

At summary judgment, the District Court brushed aside these findings for the stated reason that they "do not persuade the Court that it would be legally authorized to recognize a new damages action at this juncture based on *Egbert*'s restrictive remedial approach." Dkt. 202 at 8. In doing so, the District Court latched onto the following language from *Egbert*: "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 8-9.

The District Court completely misses the point here. Johnson does not dispute the general adequacy of the BOP's administrative remedy process. When operated as intended, the BOP's grievance process can provide meaningful relief to inmates, such that it could foreclose certain *Bivens* claims. This is the case even though the grievance process does not provide for monetary damages. However, Mr. Johnson did not have access to the BOP's administrative grievance process, at all. The District Court recognized this but still held—without any meaningful analysis—that the same unavailable administrative remedy was a sufficient alternative remedy foreclosing Johnson's *Bivens* action.

22

Whether or not the alternative remedy is specifically available is critical to the *Abassi* two-step analysis. In *Hernandez*, the Supreme Court declined to authorize a *Bivens* remedy, in part, because the Executive Branch already had investigated alleged misconduct by the defendant Border Patrol agent. *See Hernandez*, 140 S. Ct. at 745. Similarly, in *Egbert,* the Supreme Court found it important that plaintiff did, in fact, take advantage of the available grievance process, which "prompt[ed] a year-long internal investigation into Agent Egbert's conduct." *Egbert*, 142 S. Ct. at 1806. No such process was afforded to Johnson here.

Walking a tight rope, the District Court also contradicts itself. When discussing the Supreme Court's opinion in *Carlson*, the District Court specifically noted that "[a]n important aspect of the Supreme Court's test in determining whether a *Bivens* remedy should be extended is the availability of alternative remedies . . . and the *Carlson* plaintiff, having died, could not take advantage of the administrative grievance procedures made available to federal prisoners." Dkt. 202 at 7. Simply put, if plaintiff's ability to access the grievance procedure was highly relevant in *Hernandez*, *Egbert*, and *Carlson*, then why is it not also relevant here?

The District Court's holding also creates a shell game that could be employed for federal officers to escape personal liability. Not only can officers avoid accountability by thwarting the grievance process they are supposed to administer, but they can now fall back on the very process they obfuscated to escape liability for

constitutional violations as well. As other courts have noted, such an outcome is cruel and unacceptable. In *Himmelreich*, plaintiff brought a series of *Bivens* claims after he was attacked by a fellow inmate. *Himmelreich v. Fed. Bureau of Prisons*, No. 4:10CV2404, 2019 WL 4694217, at *1-2 (N.D. Ohio Sept. 25, 2019). At the summary judgment stage, defendants argued that certain of plaintiff's claims were not cognizable because the existence of the BOP's grievance procedure operated as a special factor weighing against expansion. *Id.* at *10.

The district court rejected this argument, pointing to a previous ruling in the case which found a genuine dispute of fact as to whether defendants intimidated plaintiff and prevented him from meaningfully accessing the prison grievance procedure. *Id.* And while defendants argued that plaintiff's claims should "nevertheless should not be allowed to persist because an administrative-remedy process exists for prisoners generally," the district court held that such a position was "difficult to stomach and by no means necessary." *Id.* The district court further noted that an "officer-defendant cannot actively obstruct a prisoner's access to a grievance procedure, then invoke the availability of that same grievance procedure to argue that no cause of action should exist at all." *Id.* at 11. As such, the court acknowledged that "the facts of this particular case" placed any conclusion that the *Bivens* action was foreclosed "out of reach." *Id.* at 10.

Much like *Himmelreich*, the facts of this case readily demonstrate that the BOP administrative process failed to serve as any meaningful deterrent. The District Court itself made that determination, and this is precisely the type of scenario that *Bivens* and its progeny are meant to protect against. *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."); *see also Raines v. Byrd*, 521 U.S. 811, 829 (1997) ("The irreplaceable value of the power [of Article III courts] . . . lies in the protection it has afforded the constitutional rights and liberties of individual citizens and minority groups against oppressive or discriminatory government action.").

Further, there are no separation of powers issues here. Unlike other cases where the Supreme Court has denied a *Bivens* remedy, this case does not involve a realm of law best left to one of the other branches of government, such as the national security or military concerns present in *Abbasi* and *Egbert*. In fact, the reasoning of *Egbert* aptly demonstrates the contrast present here. In *Egbert*, the Supreme Court addressed whether a *Bivens* remedy existed for a Fourth Amendment excessive force claim against Border Patrol agents. The Ninth Circuit had held that this was a "new *Bivens* context," and that "special factors" did not counsel against recognizing a cause of action in this context. *Egbert*, 142 S. Ct. at 1804. The Supreme Court reversed, holding that there was no *Bivens* remedy available, primarily because

25

Border Patrol agents would constitute a new category of defendants that *Bivens* had never reached. *Id.* The Court relied on *Hernandez*—where it had declined to create a new *Bivens* remedy for an excessive force claim against a Border Patrol agent who shot and killed a 15-year-old Mexican national across the border—and held that regulating Border Patrol agents "unquestionably had national security implications." *Id.* Because "Congress [was] better positioned to create remedies in the border-security context" than the Judiciary, a *Bivens* remedy was unavailable. *Id.* The claims by Johnson do not remotely implicate the national-security context and, thus, does not encroach on any particular specialty of the other branches of government. *See Aaron v. City of Lowell*, No. 20-CV-11604-ADB, 2023 WL 2743337, at *16 (D. Mass. Mar. 31, 2023) ("Unlike in Egbert, this case does not implicate the 'border-security context,' and therefore the fact that matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention does not counsel against recognizing a *Bivens* remedy here.") (cleaned up).

Further, this is not an area with a new class of defendants. Opposite of *Egbert*, which involved a new category of defendants, Johnson's claims arise in the context of prison, a frequent subject of judicial scrutiny and an already well-established *Bivens* context. *Bivens* claims against prison officials have been recognized for decades and they continue to be recognized, even after *Abbasi* and *Egbert*. Because the Supreme Court has already recognized a *Bivens* remedy involving the same

26

claims and class of defendants at issue in Johnson's case, the Court does not have to worry about infringing on Congress' or the Executive's lawmaking ability.

Also, Johnson's claims do not "call into question the formulation and implementation of a general policy," a claim disfavored in *Abbasi* and *Egbert*. *See Egbert*, 142 S. Ct. at 1803 (taking into consideration whether a new remedy might cause "systemwide" consequences). Johnson is not challenging the administrative procedure as a whole or attempting to create a "general policy" in the absence of congressional action. Instead, the focus of Johnson's case is the availability of a remedy in a discrete situation where the Court has *already* determined that the remedies enacted by Congress failed. Accordingly, a *Bivens* remedy here would not upset any already existing remedy structure or attempt to make general policy. Any concern about separation of powers is ameliorated by the fact that an individual must decidedly show that the remedy has failed in the precise circumstances at issue—a determination that is undoubtedly within the Court's authority. *Thomas v. Bradshaw*, No. 20-13471, 2022 WL 333244, at *5 (11th Cir. Feb. 4, 2022) (expressly recognizing the Court's authority to determine whether or not an administrative remedy is available) (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)).

To the contrary, preventing a *Bivens* action from going forward here would usurp power that is already within the Court's dominion. The District Court's decision creates a puzzling conundrum: the judiciary has the ability to decide

27

*whether* an administrative remedy failed but then erases the Court's authority from remedying the same violations of law that occurred in the midst of that failure. This type of unresolved justice does nothing to protect the separation of powers.

## **<u>CONCLUSION</u>**

For the foregoing reasons, LaQuan S. Johnson respectfully requests that the Court reverse the District Court's order granting Defendants' Motions for Summary Judgment.

This the 29th day of June, 2023.

Respectfully submitted,

<u>/s/ J. Matthew Brigman</u>

**KING & SPALDING LLP**
W. Ray Persons
(Ga. Bar No. 573525)
James Matthew Brigman
(Ga. Bar No. 254905)
Logan R. Hobson
(Ga. Bar No. 341501)
Thomas H. Paris
(Ga. Bar No. 152557)

1180 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Fax: (404) 572-5100
rpersons@kslaw.com
mbrigman@kslaw.com
lhobson@kslaw.com
tparis @kslaw.com

*COUNSEL FOR APPELLANT*

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for the Appellant hereby certifies that this Brief was prepared using 14 point Times New Roman in compliance with FRAP 32(a)(5) and (6) and contains 6,082 words, as required by FRAP 32(a)(7)(B)(i), excluding the Cover Page, Certificate of Interested Persons and Corporate Disclosure Statement, Statement Regarding Oral Argument, Table of Contents, Table of Citations, Statement of Subject-Matter and Appellate Jurisdiction, this Certificate, and the following Certificate of Service.

This the twenty-ninth day of June, 2023.

**KING & SPALDING LLP**

<u>/s/ J. Matthew Brigman</u>
J. Matthew Brigman
Georgia Bar No. 254905

29

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 29, 2023, a copy of the foregoing **BRIEF OF APPELLANT LAQUAN S. JOHNSON** was served via this Court's electronic filing system on the following:

R. David Powell
Office of the United States Attorney-ATL600
Northern District of Georgia
600 United States Courthouse
75 Ted Turner Dr., S.W.
Atlanta, GA 30303
404-581-6004
R.David.Powell@usdoj.gov

This the twenty-ninth day of June, 2023.

KING & SPALDING LLP


/s/ J. Matthew Brigman
J. Matthew Brigman
Georgia Bar No. 254905